IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Catalina London Limited f/k/a Alea London Limited, | Civil Action No.: 4:11-cv-1661-RBH |
| Plaintiff, | |
| v. | **ORDER** |
| Elisa Narruhn and R.K.C. Entertainment LLC d/b/a/The Red Room, | |
| Defendants. | |

This lawsuit arises from a dispute between Plaintiff, Catalina London Limited f/k/a Alea London Limited ("Plaintiff" or "Alea London") and Defendants Elisa Narruhn ("Ms. Narruhn"), and R.K.C. Entertainment LLC d/b/a The Red Room ("The Red Room"). Alea London seeks a declaration from this Court regarding the duties owed to Defendants under Alea London Insurance Policy ALT047106 ("the Policy"). Currently pending before the Court is Defendant Ms. Narruhn's Motion for Summary Judgment, or in the alternative, Motion for Judgment on the Pleadings. [Def.'s Mot., Doc. # 9.]

For the following reasons, this Court declines to exercise jurisdiction over the declaratory judgment action, all pending motions are dismissed as moot, and this case is dismissed in its entirety without prejudice.[1]

**Background and Procedural History**

In December 2004, Mr. Richard Cronce ("Mr. Cronce"), on behalf of The Red Room, a nightclub in Myrtle Beach, S.C., applied for insurance coverage through Anderson General

---

[1] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." The issues have been briefed by the parties, and the Court believes a hearing is not necessary.

Insurance, also of Myrtle Beach, South Carolina. Alea London, through Anderson General Insurance, issued the Policy to Mr. Cronce and The Red Room.

### I.   Initial state court proceedings

On April 9, 2005, a shooting occurred at The Red Room, in which Ms. Narruhn was hit by a bullet and rendered paraplegic. In August of 2005, Ms. Narruhn filed a personal injury action in state court against The Red Room and the shooter. According to Alea London, Cronce, who was served in the action as the registered agent for The Red Room, never provided any notice of the suit to Alea London or to its local agency, Anderson General Insurance Anderson. Alea London further contends that the Policy was no longer in effect at the time of the shooting, and that the Policy would otherwise have excluded from coverage the cause of Ms. Narruhn's injuries. The Red Room never filed an answer in the original suit, and an order of default was issued in 2006.

### II.   Supplemental state court proceedings

On June 25, 2009, pursuant to the order of default, a judgment was entered against The Red Room for six million dollars. Ms. Narruhn then commenced supplemental proceedings to determine the assets of The Red Room. The circuit court judge referred the matter to a special referee, who held a hearing on the matter with only Ms. Narruhn's attorney in attendance. In an order entered March 8, 2010, the special referee granted Ms. Narruhn, among other things, an assignment of all rights The Red Room may have against Alea London under the Policy up to the amount of the six million dollar default judgment. The parties vigorously dispute the validity of this assignment.

### III.   Pending state court action

On March 4, 2010, Ms. Narruhn filed an amended complaint in the Circuit Court of Horry County, South Carolina, No. 2010-CP-26-4112, against Alea London and Anderson General

Insurance, in her capacity as assignee of The Red Room. Ms. Narruhn alleged causes of action for bad faith, failure to defend, negligence, and unfair trade practices. Alea London filed an answer on April 4, 2011, alleging, among other defenses, that the policy was cancelled at the time of Ms. Narruhn's injuries, and that the terms of the Policy precluded coverage. Alea London also moved to set aside the special referee's March 8, 2010, order assigning The Red Room's rights under the Policy to Ms. Narruhn. In an order entered May 2, 2011, the state court denied that motion. Alea London timely appealed this denial to the South Carolina Court of Appeals, and filed its initial appellate brief on July 20, 2011.

## IV. Pending federal action

On July 8, 2011, after its motion in state court was denied and appealed, but before it filed its initial brief on appeal, Alea London filed the federal declaratory judgment action before this Court. In its complaint, Alea London asks the court to declare the following:

- that the Policy was cancelled at the time of Ms. Narruhn's injury;

- that the Policy's terms specifically excluded injuries resulting from assault and/or battery; and

- that Alea London has no duty to defend because The Red Room failed to provide requisite notice of the 2005 lawsuit per the terms of the Policy.

[Pl.'s Compl., Doc. # 1, at ¶¶ 25–34.]

On October 3, 2011, Ms. Narruhn filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or in the alternative, a motion for summary judgment. [Def.'s Mot., Doc. # 9-1, at 1.] Ms. Narruhn argues that she is entitled to judgment in her favor because Alea London should have filed a mandatory counterclaim in the pending state court action. [*Id.* at 1.] Ms. Narruhn also argues that this Court should refrain from exercising jurisdiction over this case under the Declaratory Judgment Act because there is a parallel state

3

proceeding in which the ultimate issues relevant to both cases will be resolved, *i.e.*, the scope of Alea London's duties under the Policy. [*Id.* at 4–5.]

## **Legal Standard**[2]

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction,[3] "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998); *see also Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (holding that a district court may decline to hear a declaratory judgment action for "good reason").[4]

"[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

---

[2] Because this Court declines to hear this declaratory judgment action, it is unnecessary to discuss the legal standards governing summary judgment or motions for judgment on the pleadings.

[3] No party appears to dispute that this case is otherwise within the Court's diversity jurisdiction.

[4] The Fourth Circuit noted in *Centennial Life Insurance Co. v. Poston* that in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the Supreme Court overruled Nautilus *only to the extent* it suggested that a district court's decision over whether to entertain a declaratory judgment action should be reviewed under a standard other than abuse of discretion. 88 F.3d 255, 257–58 (4th Cir. 1996).

However, when a related state court proceeding is pending, "considerations of federalism, efficiency, and comity" should inform the district court's decision whether to exercise jurisdiction over a declaratory judgment action. *Penn–Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Poston*, 88 F.3d at 257).

To determine whether to proceed with a federal declaratory judgment action when a parallel state action is pending, the Fourth Circuit has focused on four factors, called the *Nautilus* factors, for guiding the analysis:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493–94 (4th Cir. 1998) (quoting *Nautilus Ins.*, 15 F.3d at 377).

## Discussion

As discussed more fully below, each of the *Nautilus* factors indicate that this Court should decline to hear the present declaratory judgment action. Accordingly, judgment in this declaratory judgment would not serve a useful purpose in clarifying and settling the legal relations in issue.

**I.** **South Carolina has a strong interest in having its courts decide the issues in this case**

South Carolina courts have an interest in advancing their own jurisprudence and in deciding issues under South Carolina law. *See*, *e.g.*, *Coffey*, 368 F.3d at 414; *Kapiloff*, 155 F.3d at 494.

Alea London disagrees. It relies on the Fourth Circuit's holding in *Penn–Am Ins. Co. v. Coffey,* 368 F.3d at 414,[5] which held that a state's interests were not significant in a declaratory judgment action brought by a liability insurer because the contractual coverage issue would not be decided in the pending state court case, the liability insurer was not named as a party in the state court case, and the state law issues were standard. Although Alea London argues that *Coffey* contains the "exact same observations" as the "case at hand," Alea London fails to note that key holdings from *Coffey* bolster South Carolina's interest here. [*See* Pl.'s Resp., Doc. # 14, at 10.]

A. The issue of Alea London's duties under the Policy is before the state court, where Alea London is a party

Before examining whether Alea London's duties under the policy are an issue in the pending state court case, a brief discussion of the pending state court case is helpful. In a South Carolina state court order entered March 8, 2010, a special referee assigned Ms. Narruhn any and all claims The Red Room might have against Alea London. [*See* Pl.'s Resp., Doc. # 14-3.] In the pending state court litigation, filed on March 4, 2011, Ms. Narruhn sued Alea London directly, along with its local agent, in her capacity as assignee for The Red Room, claiming that Alea London was obligated "to defend" The Red Room and failed to do so. [*See id.*, Doc. # 14-7, at ¶¶ 18–36.] In its answer filed before the state court, Alea London denied that it had a duty to defend The Red Room, and specifically listed as defenses, among others, (1) "Terms of the

---

[5] In its Response to Ms. Narruhn's argument that this Court should refrain from hearing Alea London's request for declaratory relief, Alea London relies heavily, and nearly exclusively, on the Fourth Circuit's 2004 holding in *Penn–Am Ins. Co. v. Coffey.* [*See* Pl.'s Resp., Doc. # 14, at 7–17.] In *Coffey*, a restaurant patron filed a tort action against the restaurant for injuries he sustained in the parking lot when he was struck by an automobile driven by another customer. *Coffey*, 368 F.3d at 411. The liability insurer, who was not a party to the state court action, brought a declaratory judgment action in federal court against the insured restaurant and others seeking a declaration that it had no duty to defend or indemnify the restaurant in the underlying state court action. *Id.* at 411–12. The Fourth Circuit ruled that the district court abused its discretion in declining to hear the liability insurer's declaratory judgment action. *Id.* at 414–415. For the reasons discussed throughout this Order, *Coffey* illustrates that the action at bar represents the precise type of case where a court should refrain from hearing a declaratory judgment action.

6

Insurance Agreement," craving reference to all of its "conditions, exclusions, and endorsements," and (2) "Policy Cancelled," explaining that because the "policy was no longer in effect, . . . it provides no coverage . . . ." [Def.'s Mot., Doc. # 9-6, at ¶¶ 18, 32–33, 42–43.]

Alea London also filed a motion in state court, which was denied, to set aside the special referee's order assigning to Ms. Narruhn the claims The Red Room might have against Alea London. [*See* Pl.'s Resp., Doc. # 14-2, at 1.] Alea London's appeal is currently pending before the South Carolina Court of Appeals, where Alea London has requested the appellate court "vacate" the special referee's order. [*See id.*, Doc. # 14-4, at 26.]

In its federal declaratory judgment action, Alea London seeks a declaration that the Policy was cancelled at the time of the underlying injury, a declaration that the Policy's terms specifically excluded injuries resulting from assault and/or battery, and a declaration that Alea London has no duty to defend because The Red Room failed to provide requisite notice per the terms of the Policy. [Pl.'s Compl., Doc. # 1, at ¶¶ 25–34.][6] These claims are precisely encompassed by the defenses Alea London raised in its state court answer, which was filed more than three months before the present declaratory judgment action. [Def.'s Mot., Doc. # 9-6, at ¶¶ 18, 32–33, 42–43.] Moreover, should the South Carolina Court of Appeals uphold the assignment,[7]

---

[6] Because the Court is declining to exercise jurisdiction over this declaratory judgment action, it need not rule on whether Alea London's claims herein qualify as compulsory counterclaims in the pending state court case. However, as discussed above, the Court notes that the claims raised by Alea London in this federal action have already been argued by Alea London as defenses in the pending state action. Should Alea London also wish to state these defenses as affirmative counterclaims in the state court action, it certainly has the ability to make a motion to amend before the state court.

[7] Should the South Carolina Court of Appeals side with Alea London and vacate the special referee's assignment of The Red Room's rights under the Policy to Ms. Narruhn, the federal case, as well as several, if not all, of the causes of action in the state case, would be rendered moot. If the South Carolina Court of Appeals vacates the order of the special referee, then Ms. Narruhn will no longer be able to pursue any action under the Policy as The Red Room's assignee. Accordingly, there would not be a pending or threatened action involving interpretation or applicability of the Policy. Although Alea London has also moved in the federal action to declare

7

then a threshold inquiry in the state case, as evidenced by Alea London's own defenses therein, will be whether the Policy was in force at the time of Ms. Narruhn's injury and, if so, whether Alea London had a duty to defend The Red Room from Ms. Narruhn's initial personal injury lawsuit - these are the precise contractual coverage issues in this case.

### B. The state law issues in this case are not standard

Although federal courts routinely apply South Carolina law in insurance disputes, there are other South Carolina state law issues that are present in this case which are highly unusual. Specifically, Alea London's federal complaint would require this Court to delve into the circumstances surrounding the assignment, which is wrought with nuances of state law[8] and is an issue currently under review by a South Carolina appellate court.

A review of the record in the federal case makes it clear that it would be nearly impossible for this Court to rule on declaratory judgment without delving into the validity of the assignment. Alea London's complaint discusses the circumstances surrounding the assignment. [*Id*. at ¶¶ 17–21.] Moreover, although Ms. Narruhn responded to the federal complaint, representatives from the Red Room did not. Based on the information provided by both Alea London and Ms. Narruhn, The Red Room has never responded to litigation stemming from Ms. Narruhn's injuries or any of the actions that followed.

---

its rights as against The Red Room, The Red Room has not filed any action against Alea London, has filed no answer in the current federal case, nor has Alea London alleged that there is any other pending action involving The Red Room that would implicate the Policy.

[8] These state law issues include, among other things, the validity of the assignment, whether a motion under South Carolina Rule of Civil Procedure 60(b) must be addressed only to the special referee who issued it, whether granting Alea London's Rule 60(b) motion would require one circuit judge to overrule another, the amount and type of notice required for liability carriers in supplemental proceedings, and whether Ms. Narruhn's original claim against The Red Room is a chose in action. [*See* Pl.'s Resp., Doc. # 14-4, at 6, 7, 13, 16.]

Given The Red Room's failure to respond, Alea London has moved for default judgment against The Red Room in the federal action. [Pl.'s Mot. For Default, Doc. # 13.] The subsequent filings on this issue delve into the assignment and its propriety. [*See id.*; Def.'s Resp., Doc. # 16; Pl.'s Reply, Doc. # 18.] In these filings, Alea London argues that the Court should grant its motion for default judgment against The Red Room, in spite of Ms. Narruhn's objections, because Ms. "Narruhn has no legal basis for intervening regarding [Alea London's] rights against its insured." [Pl.'s Reply, Doc. # 18, at 3.]

However, under South Carolina law, an assignee stands in the shoes of its assignor. *Twelfth RMA Partners, L.P. v. Nat'l Safe Corp.*, 335 S.C. 635, 639–40, 518 S.E.2d 44, 46 (Ct. App. 1999) ("[T]he assignee should have all the same rights and privileges."). Therefore, in order to accept Alea London's proposition that Ms. Narruhn has no "legal basis" to object to default, and to grant its motion for default judgment against The Red Room, this Court would have to determine the validity of the assignment of The Red Room's rights by the South Carolina special referee to Ms. Narruhn. In addition to requiring a foray into South Carolina law, this Court would be taking up an issue (the validity of the assignment by the special referee) that has been fully briefed and is pending before a South Carolina appellate court. [*See* Pl.'s Resp., Doc. # 14-4, at 6, 7, 13, 16.] *See also Mitcheson v. Harris*, 955 F.2d 235, 238 (4th Cir. 1992) (holding that a federal court "should not elbow its way into [a] controversy to render what may be an 'uncertain and ephemeral' interpretation of state law").

## II. South Carolina courts could resolve the issue in this case more efficiently, and the overlapping issues in the state and federal cases will create unnecessary entanglement

A review of the second and third *Nautilus* factors also indicates that this Court should decline to hear the declaratory judgment action.

9

### A. State courts would more efficiently adjudicate this matter

South Carolina courts can resolve the issues here more efficiently than this Court. "As a general rule, 'the first suit should have priority, absent the showing of balance of convenience in favor of the second action.'" *Riley v. Dozier Internet Law, PC*, 371 Fed. App'x 399, 403 (4th Cir. 2010) (quoting *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n 2 (4th Cir. 1974)). Here, the state suit was filed before the federal suit, and as noted above, the defenses in the state action mirror the affirmative causes of action in the federal case. The state proceeding is also further along than the federal action, with Alea London itself having at least once made a motion, received a ruling, and filed an appeal on a key issue. "This court's interference with the pending state court proceeding would therefore produce inefficiencies by needlessly duplicating efforts, generating piecemeal litigation, and expending limited judicial resources." *Id*.

South Carolina courts can also adjudicate this matter more efficiently because, in the state court case, Ms. Narruhn filed suit against both Alea London and its South Carolina-based insurance agent, Anderson General Insurance, alleging that both companies failed their duties under the policy. [Def.'s Mot., Doc. # 9-6.] Further, Ms. Narruhn brought respondeat superior claims and unfair trade practice claims against both companies. [*Id*. at ¶¶ 37–46.] These additional parties and claims in the state action further indicate that the state courts could hear this matter more efficiently. *See New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 298 (4th Cir. 2005) (affirming a district court's decision not to hear a declaratory judgment action, noting that "the presence of other parties and issues in the state action not present in the federal declaratory judgment action is 'particularly salient'").

### B. Hearing this case would cause unnecessary entanglement

There are overlapping issues that would create unnecessary entanglement between the state and federal courts. As discussed at length above, both the state and federal cases require analysis

10

into the validity of the assignment by the special referee. Additionally, both cases center on an identical issue: whether the Policy was enforceable at the time of Ms. Narruhn's injury, and whether the cause of Ms. Narruhn's injury was covered under the Policy. "Entanglement is all the more likely where, as here, common issues 'are already being litigated by the same parties in the related state court action.'" *Riley*, 371 Fed. App'x at 403 (quoting *Nautilus Ins*., 15 F.3d at 379). "In such cases, there is a real risk that the state court's prior resolution of overlapping issues would entitle those issues to preclusive effect, thereby 'frustrat[ing] the orderly progress of the proceedings by leaving . . . some parts of the case foreclosed from further examination but still other parts in need of full scale resolution.'" *Id*. (citation and internal quotations omitted).

Although Alea London draws heavily on *Coffey* in arguing that the second and third *Nautilus* factors tip in its favor, this reliance is misplaced. [*See* Pl.'s Resp., Doc. # 14, at 11–17.] *Coffey* dealt with a more typical type of insurance case, where courts routinely entertain declaratory judgment actions: a liability insurer seeks a declaration of policy terms against an insured in federal court, after its insured has been sued by an injured party in state court. *See, e.g.*, *Coffey*, 368 F.3d at 411. However, a more analogous set of facts can be found in cases where, as here, a direct action was brought against a defendant in state court, and that defendant then sought relief in federal court under similar or identical grounds. *See, e.g.*, *Riley v. Dozier Internet Law, PC*, 371 Fed. App'x at 406 (jurisdiction properly declined where operator of internet site sought declaratory judgment that operator was not liable defamation or trademark infringement against law firm *after* law firm filed a state court trademark infringement action against operator); *New Wellington Fin. Corp.*, 416 F.3d at 298 (jurisdiction properly declined where finance company filed an amended complaint in federal court against resort companies *after* resort companies had sued the finance company in state court for similar grounds).

11

**III.     The federal action has the appearance of "procedural fencing"**

The final *Nautilus* factor also weighs in favor of declining jurisdiction insofar as Alea London's federal suit appears to be the product of forum-shopping, or "procedural fencing." Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state court resolved first in a more favorable forum." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 212 (4th Cir. 2006). Here, the record and circumstances of this case evidence an effort to seek out a more favorable forum.

First, Ms. Narruhn's sued Alea London in state court, along with a South Carolina business, which negated Alea London's ability to remove the case on the basis of diversity jurisdiction. However, while removal is the appropriate avenue into federal court, a declaratory judgment action may not be used "to achiev[e] a federal hearing in a case otherwise not removable." *Nautilus Ins.*, 15 F.3d at 377 (citation and internal quotations omitted). That appears to be what happened here.

Second, rather than file this federal action immediately after being brought into state court, Alea London filed this declaratory judgment action *only after* it drafted, filed, argued, and lost a potentially dispositive motion in the state proceeding. It was only in defeat that Alea London filed its federal action. This is strong evidence of procedural fencing.

Third, this Court finds Alea London's argument that it seeks a federal forum because of the possibility of local prejudice "based on the prior proceedings," a primary argument for bringing the current federal action, wholly unavailing. [*See* Pl.'s Resp., Doc. # 14, at 12.] As has been discussed, Alea London took full advantage of the South Carolina state court system without

12

any apparent fear of prejudice. Further, Alea London still seeks refuge in the state court system by appealing the interlocutory trial court order to the South Carolina Court of Appeals.[9]

## Conclusion

Each of the four *Nautilus* factors indicates that federalism, efficiency, and comity caution against hearing Alea London's declaratory judgment action. It logically follows that any such judgment would not appropriately clarify nor settle the legal relations at issue.

Therefore, based on the foregoing, it is **ORDERED** that:

1. This Court **DECLINES** to exercise jurisdiction over the pending declaratory judgment action;

2. All pending motions in this case are **DENIED AS MOOT**; and

3. This case is hereby **DISMISSED**, *without prejudice*, in its entirety.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
February 17, 2012

---

[9] Additionally, by Alea London's own admission, Ms. Narruhn sued a representative for The Red Room in South Carolina state court in 2008. *See* [Pl.'s Compl., Doc. # 1, at ¶ 16]; *Narruhn v. Barron*, 2008-CP-26-02609. Rather than file a federal declaratory judgment action, Alea London issued a disclaimer claiming that the policy had been cancelled, and allowed the state court action to proceed.